## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CONNIE SHIVNER, Individually and as
Personal Representative of the Wrongful
Death Estate of John Shivner, Deceased,

       Plaintiff,

v.                                     No. CIV 20-0497 RB/CG

CORRVALUES, LLC, GILA REGIONAL
MEDICAL CENTER, BOARD OF TRUSTEES
OF GILA REGIONAL MEDICAL CENTER,
BOARD OF COUNTY COMMISSIONERS OF
GRANT COUNTY, GRANT COUNTY DETENTION
CENTER, MICHAEL CARILLO, JOHN/JANE DOES
I AND JOHN/DANE DOES II, Individually and in
his/her official capacity as an employee of Grant County
Detention Center, Gila Regional Medical Center, and/or
CorrValues, LLC,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This lawsuit arises out of the alleged failure to provide John Shivner with timely and adequate post-operative medical care while he was a pretrial detainee at the Grant County Detention Center (GCDC), resulting in his death. Ms. Connie Shivnr (Plaintiff), his widow and the personal representative of his estate, brings a variety of state and federal claims under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1–30 (NMTCA), and 42 U.S.C. § 1983. At issue are the claims against the County Defendants: the Board of County Commissioners of Grant County (the Board), the GCDC, and Michael Carillo, the administrator of the GCDC.[1] For the reasons discussed herein, the Court will grant the County Defendants' motion to dismiss in part.

---

[1] The County Defendants have disregarded all County Doe defendants, as they "are not identified with any particularity . . . ." (Doc. 33 at 2 n.4 (citation omitted).)

## I.    Statement of Facts[2]

Mr. Shivner was arrested on December 26, 2017. (Doc. 28 (FAC) ¶ 40.) He was initially transported to a Texas medical facility due to a gunshot wound and was later released to GCDC custody on December 31, 2017. (*Id.* ¶¶ 40–41.) Mr. Shivner's post-operative discharge instructions and medications included Docusate, a stool softener used to treat constipation. (*Id.* ¶ 42.) *See also Docusate Sodium*, WebMD, https://www.webmd.com/drugs/2/drug-323/docusate-sodium-oral/details (last visited Mar. 10, 2020).

Mr. Shivner complained to GCDC staff on February 13 and 14, 2018, that he had pain and discomfort due to constipation. (FAC ¶ 45.) GCDC staff ignored his complaints and/or refused to administer care. (*Id.*) On February 15, 2018, he "repeatedly complained" that he had been unable to have a bowel movement for the past three to four days, "and he was given one dose of milk of magnesia." (*Id.* ¶ 46.) The next day, Mr. Shivner "was visibly suffering from constipation symptoms and began vomiting." (*Id.* ¶ 47.) Eventually, Mr. Shivner was transferred to Gila Regional Medical Center (Gila), where he "was diagnosed with constipation secondary to narcotic pain medication and was admitted." (*Id.* ¶¶ 51–52.) Despite undergoing emergency procedures to alleviate his constipation, Mr. Shivner "continued to deteriorate to the point where he vomited, aspirated, and suffered respiratory failure." (*Id.* ¶ 53.) Mr. Shivner died on February 20, 2018, due in part to acute respiratory failure, pneumonia, and septic shock secondary to diffuse gangrenous colon. (*Id.* ¶ 54.)

Plaintiff filed suit in New Mexico state court on February 19, 2020, and the County Defendants removed the case to this Court on May 22, 2020. (*See* Docs. 1; 1-2.) The County Defendants filed their first motion to dismiss on May 28, 2020. (Doc. 4.) Plaintiff responded on

---

[2] The Court recites the facts as they are alleged in the First Amended Complaint. (Doc. 28 (FAC).)

July 10, 2020, and filed her First Amended Complaint on July 29, 2020. (Docs. 20; 28.) The County Defendants filed their second motion to dismiss on August 21, 2020; it is fully briefed. (Docs. 33; 35; 36.) The First Amended Complaint largely moots the arguments in the first motion to dismiss, except to the extent discussed in Section IV(D) below.

At issue in the County Defendants' second motion to dismiss are Counts I-VI. In Count I, Plaintiff asserts a claim for violation of Mr. Shivner's Fourteenth Amendment Due Process rights under § 1983 against the Board and Carillo (FAC ¶¶ 56–64); in Count II, she asserts a claim for failure to train/supervise under § 1983 against the Board and Carillo (*id.* ¶¶ 65–78); in Count III, Plaintiff asserts a claim for negligence under the NMTCA against all County defendants (*id.* ¶¶ 79–91); in Count IV, she asserts a claim for negligent operation of a medical facility against the Board and Carillo (*id.* ¶¶ 92–98); in Count V, she asserts a claim for negligent operation of a building under the NMTCA against the Board (*id.* ¶¶ 99–104); and in Count VI, Plaintiff asserts a claim for negligent hiring, training, and supervision against the GCDC and Carillo (*id.* ¶¶ 105–11).

## II.   Legal Standards

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a

complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

**B.    Qualified Immunity**

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet her burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied Cummings v. Bussey*, 140 S. Ct. 81 (2019).

**III.    Counts III–VI**

**A.    The Court will not dismiss the state claims on the basis that the statute of limitations has run.**

Plaintiff brings state tort claims for negligence under the NMTCA in Counts III–VI. The parties agree that Counts III–VI are governed by the NMTCA and that the NMTCA's two-year statute of limitations applies. (*See* Docs. 33 at 7; 35 at 3.) *See also* N.M. Stat. Ann. § 41-4-15(a). The County Defendants contend that Plaintiff's state tort claims are barred under § 41-4-15(a). *See* Doc. 33 at 7–9.) Section 41-4-15(a) provides: "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ." Thus, for Plaintiff's original state court complaint to have been timely filed on February 19, 2020, her claims would have had to accrue no later than February 19, 2018.

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Torrez v. Eley*, 378 F. App'x. 770, 772 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). "When a party has asserted a statute of limitations issue in a Rule 12(b)(6) motion, the Court assesses whether the complaint alone is legally sufficient to state a claim upon which relief can be granted." *Rico-Reyes v. New Mexico*, No. 2:20-CV-00929-WJ-GBW, 2020 WL 7023993, at *1 (D.N.M. Nov. 30, 2020) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). Here, the dispositive dates in the First Amended Complaint include February 13–15, 2018, the dates that Mr. Shivner repeatedly complained to GCDC staff regarding pain and discomfort due to constipation; February 16, 2018, the date Mr. Shivner "was visibly suffering from constipation symptoms and began vomiting[,]" causing GCDC staff to transfer him to Gila; February 20, 2018, the date Mr. Shivner passed away; and February 19, 2020, the date Plaintiff filed her original complaint in state court. (*See* FAC at 1, ¶¶ 45–47, 51, 54.)

The County Defendants assert that because Mr. Shivner was transferred to Gila on February 16, 2018, "[t]he statute of limitations for claims against the County Defendants expired on February 16, 2020 . . . ." (Doc. 33 at 8.) They argue that as Mr. Shivner was transferred out of GCDC on February 16, that is "the last day that any County Defendant could have taken any negligent act against Mr. Shivner . . . ." (*Id.*)

For purposes of the NMTCA, the statute of limitations begins to run "[o]nce a plaintiff has discovered his or her injury and the cause of that injury . . . ." *Maestas v. Zager*, 152 P.3d 141, 148 (N.M. 2007). This is known as the "discovery rule." *See id.* The plaintiff need not know the full extent of the injury, nor all the resulting damages, before the statute of limitations begins to run.

*See id.* It is not even necessary that the plaintiff knows that the defendant's conduct was negligent. *See id.* "A plaintiff's cause of action accrues when he or she understands the nature of his or her injury; that is, when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Id.*

Under this standard, it does not matter that the County Defendants could not have taken any negligent act against Mr. Shivner after February 16. The relevant inquiry is when Mr. Shivner discovered his injury and the cause of his injury. Plaintiff clearly alleges the *County Defendants* should have known that Mr. Shivner was ill and needed care. (*See, e.g.*, FAC ¶¶ 47, 60.) Yet the complaint does not make clear when *Mr. Shivner* understood the nature of his injury and its cause. Instead, the allegations show that after his arrest and initial hospital stay, the hospital transferred him to the GCDC with instructions and a prescription for medication to relieve constipation. (FAC ¶ 42.) It is not clear whether Mr. Shivner had knowledge of this prescription. And while he repeatedly complained of pain and discomfort due to constipation, GCDC staff did administer milk of magnesia, a laxative used to treat constipation. (*See id.* ¶¶ 45–47.) *See also Milk of Magnesia Suspension*, WebMD, https://www.webmd.com/drugs/2/drug-326/milk-of-magnesia-oral/details (last visited Mar. 10, 2021). Even after he was admitted to the hospital on February 16, 2018, the complaint does not make clear what information he had and when.

In *Arnold v. Johnson*, the plaintiff had spinal surgery, which "involv[ed] the placement of metal hardware and four screws into his spine." No. 6:07-CV-00170-BB, 2008 WL 11412089, at *1 (D.N.M. Feb. 11, 2008). Thereafter, he "experience[d] persistent pain, numbness, and weakness in his left leg." *Id.* Though 2002 MRI evidence showed that one of the screws was crooked, at least three doctors assured him that his symptoms were unrelated to the screw placement. *Id.* at *2. "[I]t was not until he saw an orthopedic surgeon in 2004 that he finally received a diagnosis from a

medical professional that the crooked screw was in fact the cause of his pain . . . ." *Id.* The defendant argued that the 2002 MRI had confirmed the plaintiff's suspicions, causing his cause of action to accrue. *See id.* at *3. Applying the discovery rule, the court disagreed. "[A] simple suspicion regarding the cause of injury is not sufficient to accrue the cause of action under New Mexico law, particularly where the plaintiff has no medical confirmation of that suspicion." *Id.* (citing *Maestas*, 152 P.3d at 148). While the plaintiff may have known that he had pain, without specialized knowledge or training he was "unable to ascertain the cause of that pain . . . ." *See id.* (quoting *Roberts v. Sw. Cmty. Health Servs.*, 837 P.2d 442, 450 (N.M. 1992)).

The same is true here. While the complaint makes clear that Mr. Shivner was suffering from constipation-related symptoms, there are no allegations to show Mr. Shivner himself knew what was causing his pain (*i.e.*, Defendants' failure to administer his prescription medication or otherwise seek treatment). Because the dates as alleged in the First Amended Complaint do not "make clear that the right sued upon has been extinguished[,]" dismissal on this basis is inappropriate. *See Torrez*, 378 F. App'x. at 772 (quotation omitted); *see also Maestas*, 152 P.3d at 148 (finding that summary judgment based on the expiration of the statute of limitation was not appropriate, because it was not clear that the plaintiff knew or with reasonable diligence should have known of the decedent's injury and its cause).

### B. The Court declines to address the County Defendants' alternative arguments.

In footnote 5 of their motion, the County Defendants offer three alternative bases to dismiss the state law claims: (1) that Plaintiff "fail[ed] to illustrate dangerous premise[s] or any danger to the public or a group of users of the building" under N.M. Stat. Ann. § 41-4-6; (2) that the claim for negligent hiring, training, or supervision under § 41-4-12 "is barred by the lack of an underlying predicate intentional tort"; and (3) that Plaintiff's "standard negligence claim [under § 41-4-4] is

also barred by the plain language of the NMTCA grant of sovereign immunity." (Doc. 33 at 7 n.5 (citations omitted).) Plaintiff did not respond to these assertions. (*See* Doc. 35.)

Defendants fail to develop any argument on these points, and the Court declines to grant their motion based on conclusory statements made in a footnote. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.") (citation omitted); *City of Albuquerque v. Soto Enters., Inc.*, No. CV 16-99 JAP/WPL, 2016 WL 9408547, at *3 n.2 (D.N.M. Apr. 11, 2016), *aff'd*, 864 F.3d 1089 (10th Cir. 2017) ("Flagging a potential issue in a footnote, however, is not sufficient to raise the issue for review.") (citations omitted). Plaintiff's state law claims remain.

## IV.   Counts I–II

In Counts I–II, Plaintiff brings claims against the County Defendants under § 1983 for violations of Mr. Shivner's due process rights and for failure to train/supervise. (FAC ¶¶ 56–78.)

### A.   Standards

#### 1.   Supervisory Liability under § 1983

Plaintiff seeks to hold Carillo responsible, in his individual capacity, under a theory of supervisory liability. (*See id.*) "Section 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of his subordinates." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement[,] (2) causation, and (3) state of mind." *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)) (subsequent citation omitted).

To show personal involvement, the plaintiff must establish that there is "an affirmative link between the supervisor and the constitutional violation." *Id.* (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)) (internal quotation marks omitted). The plaintiff can show this affirmative link by demonstrating either that "the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy," *id.* (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)), "or 'the establishment or utilization of an unconstitutional policy or custom,' provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011)).

To establish causation, the plaintiff must "show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* (quoting *Est. of Booker*, 745 F.3d at 435). To show state of mind "'in the context of a Fourteenth Amendment claim' involving injuries to an inmate, a plaintiff can 'establish the requisite state of mind by showing that [a supervisor] acted with deliberate indifference." *Id.* (quoting *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id.* at 997–98 (quoting *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997)).

### 2.      Municipal Liability under § 1983

Plaintiff brings her claims against the Board under a theory of municipal liability. "[A] municipality may be liable only if a municipal actor committed a constitutional violation." *Id.* at 998 (citation omitted). As with "supervisory liability, the plaintiff must prove '(1) official policy or custom[,] (2) causation, and (3) state of mind.'" *Id.* (quoting *Schneider*, 717 F.3d at 769). "The custom or practice giving rise to liability must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Id.* (quotation marks and citations omitted).

### B.      Supervisory Liability: Carillo

In Count I, Plaintiff asserts that Carillo was: (1) responsible for several policies and/or practices; that (2) resulted in a violation of Mr. Shivner's right to adequate medical care under the Fourteenth Amendment; and (3) that he acted with deliberate indifference toward the risk that these policies and/or practices would result in an injury like Mr. Shivner's. (*See* FAC ¶¶ 56–64.) *See also Burke*, 935 F.3d at 1001. These policies and/or practices include: (1) an "unlawful policy or practice of granting medically-untrained law enforcement the discretion to determine the severity of an inmate's medical concerns for the purposes of seeking medical care"; (2) "creating an onerous process for detainees in need of medical care to receive care in [a] reasonable and adequate time"; (3) an "unlawful policy and practice of cutting costs by under staffing the [GCDC]"; and (4) "not providing adequate medical attention to its detainees, such as [Mr. Shivner]." (FAC ¶¶ 28, 31.) In Count II, Plaintiff asserts that Carillo was: (1) responsible for a policy or practice of failing to train and/or supervise GCDC staff; that (2) resulted in a violation of Mr. Shivner's right to adequate medical care; and (3) that Carillo acted with deliberate

10

indifference toward the risk that the failure to train/supervise would result in an injury like Mr. Shivner's. (*Id.* ¶¶ 65–78.)

The County Defendants argue that Plaintiff fails to plead facts to identify any unconstitutional policies with the required specificity and fails to show that Carillo was deliberately indifferent to any risk. (Doc. 33 at 13–15.) Alternatively, they argue that Carillo is entitled to qualified immunity because no clearly established law put him on notice that his conduct violated Mr. Shivner's rights. (*Id.* at 16.) Reading the First Amended Complaint in a light most favorable to Plaintiff, the Court finds that she fails to plead facts sufficient to "raise a right to relief above the speculative level." *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quotation omitted). Specifically, the Court agrees that she has failed to demonstrate Carillo's deliberate indifference for either claim.

### 1.    Personal Involvement

Plaintiff must first show personal involvement by establishing "an affirmative link between the supervisor and the constitutional violation." *Burke*, 935 F.3d at 997 (quotation marks and citation omitted). Here, Plaintiff identifies Carillo as the "administrator" and the final, "delegated policymaker for the GCDC" responsible for the GCDC's policies and practices and for hiring, training, and supervising GCDC staff. (*See* FAC ¶¶ 28–31, 71.) While several of the allegations regarding alleged policies and practices are conclusory and bear no obvious connection to Mr. Shivner's injuries and death (in particular "cutting costs by under staffing" and "creating an onerous process for detainees . . . to receive [adequate] care"), the gravamen of Plaintiff's claim— that Carillo provided inadequate training and gave untrained staff discretion to determine medical care for detainees—is sufficient to survive a motion to dismiss. These allegations plausibly show that Carillo was responsible "for the continued operation of a policy the enforcement . . . of which

11

subject[ed Mr. Shivner] to a constitutional violation." *Dodds*, 614 F.3d at 1199 (quotation marks and citation omitted).

As the County Defendants do not dispute causation, the Court turns next to Carillo's state of mind.

### 2.    State of Mind

Plaintiff may demonstrate that Carillo had the requisite state of mind for her Fourteenth Amendment claims by showing that he acted with deliberate indifference. *See Burke*, 935 F.3d at 997. "Deliberate indifference requires that the official 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154–55 (10th Cir. 2006) (quotation and citation omitted). Thus, Plaintiff must plead facts sufficient to show that Carillo "knew he was creating a situation that created a substantial risk of constitutional harm." *See id.*

It is on this prong that Plaintiff's First Amended Complaint fails to pass muster. Though Plaintiff alleges that Carillo was responsible for the GCDC's policies and training, she fails to make any allegations raising a plausible inference that Carillo actually knew of or consciously disregarded a substantial risk of harm to Mr. Shivner or any other detainees with health issues resulting from the policies and lack of training. *See Rozenberg v. Knight*, 542 F. App'x 711, 714 (10th Cir. 2013) (finding no supervisory liability where inmate alleged that a prison official implemented a policy but did not specifically allege that the official "was aware of or deliberately indifferent to a substantial risk of harm to him"). As a result, Plaintiff fails to demonstrate the requisite state of mind, and her supervisory liability claims fail. The Court will grant the motion to dismiss as to Carillo in Counts I and II.

### 3.   Clearly Established Law

Even if Plaintiff had pleaded facts to show Carillo's deliberate indifference, she was also required to show that his conduct violated clearly established law to overcome his defense of qualified immunity. The County Defendants argue that Carillo was not on notice "that the involvement of non-medical staff as alleged was somehow a violation of the constitution." (Doc. 33 at 16.) Plaintiff's response on this point is lacking. She asserts that clearly established law put Carillo on notice that his "conduct of depriving Mr. Shivner of attentive medical care, post-operatively, was unreasonable." (Doc. 35 at 9.) She avers "that prison officials violate a prisoner's constitutional rights 'when they act deliberately and indifferently to serious medical needs of prisoners in their custody . . . by . . . intentionally delaying or denying access to medical care that has been prescribed.'" (*Id.* at 10 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). Yet, Plaintiff does not allege that Carillo himself delayed or denied Mr. Shivner medical care; she alleges that he failed to adequately train staff and allowed them discretion to provide care. Thus, *Estelle* is not directly on point.

The Supreme Court has opined that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Instead, it "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson*, 483 U.S. at 639). Plaintiff has not cited any clearly established law that would put Carillo on notice that his conduct, in his role as a supervisor, would violate Mr. Shivner's constitutional rights.

### C.     Municipal Liability: The Board

"A municipality will not be held liable under § 1983 solely because its officers inflicted injury." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1212 (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)). "Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged." *Id.* (citing *Graves*, 450 F.3d at 1218). The Tenth Circuit has found that a policy or custom may take one of five forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Where a claim takes the fifth form—allegations of failure to adequately train or supervise—"a plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* (quoting *Brown*, 520 U.S. at 407) (quotation marks omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . ." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Neither the First Amended Complaint nor Plaintiff's response brief makes clear how she frames her claim in Count I, but the Court surmises it is based on the second type—an informal

custom. She bases Count II on the fifth type—a deliberately indifferent failure to adequately train GCDC staff. The Court will examine each in turn.

<u>Count I: Informal Custom</u>

Plaintiff's allegations in Count I do not make clear how the Board is responsible for her claim. She alleges that "Defendants knew or had reason to know of [Mr. Shivner's] serious medical condition" but "made no effort to obtain adequate and timely medical treatment . . . ." (FAC ¶ 61.) She continues, Mr. Shivner "would not have suffered the severe infection, subsequent medical care, and death if he would have been properly evaluated and received proper medical care in a timely fashion." (*Id.* ¶ 63.) Reading these facts together with the earlier allegations regarding an unwritten policy allowing untrained staff discretion to make medical decisions for detainees, the Court concludes that Plaintiff's claim is based on a theory of an informal custom.

"Plaintiffs can allege an informal custom through a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1054 (10th Cir. 2020) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)) (quotation marks omitted). To establish the existence of such a practice or custom, plaintiffs commonly allege facts to show "that similarly situated individuals were mistreated by the municipality in a similar way. Indeed, a plaintiff's failure to allege the existence of similar discrimination as to others seriously undermines her claim that the [municipality] maintained a custom of discriminatory personnel practices." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quotation marks and citation omitted).

Here, Plaintiff generally alleges that Carillo maintained "a policy and practice" of providing inadequate training to GCDC staff, of "not providing adequate medical attention to its detainees," and of allowing untrained staff discretion to determine medical care needs for

detainees." (FAC ¶¶ 28, 31.) But these allegations, which lack any specific facts to show that other detainees have been affected, are too conclusory to support a plausible showing that this informal custom or practice was widespread.

> To make allegations sufficient to show an informal policy, custom, or practice, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a police officers' statements attesting to the policy's existence.

*Griego*, 100 F. Supp. 3d at 1213. Plaintiff pleads only one instance of misconduct—the failure to promptly and adequately treat Mr. Shivner's symptoms. This is not enough: "at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Id.* at 1215. The Court finds that without facts that demonstrate similar instances of misconduct, or other evidence such as statements from staff or audits of the facility, Plaintiff's allegations regarding unconstitutional informal policies and practices are "conclusory, and the Court need not accept them as true." *See id.* at 1227–28. Consequently, Plaintiff fails to plead a plausible *Monell* claim based on an informal custom under these circumstances.

Count II: Failure to Train

"In the absence of an explicit policy or an entrenched custom, '[inadequate] training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the [actors] come into contact.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Plaintiffs may demonstrate deliberate indifference by showing that a "municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Id.* (quoting

*Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999)). Generally, a single incident—like the one here—is insufficient to impose liability. *See id.* However, the Tenth Circuit has held that under limited circumstances in failure to train claims, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Id.* (quoting *Barney*, 143 F.3d at 1307). "The official position must operate as the 'moving force' behind the violation, and the plaintiff must demonstrate a 'direct causal link' between the action and the right violation." *Id.* (quoting Brown, 520 U.S. at 399). "That is, '[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?'" *Id.* (quoting *City of Canton*, 489 U.S. at 391).

In *Olsen*, for example, the plaintiff alleged that the county "manifested deliberate indifference by failing to train its jail's prebooking officers to recognize [obsessive compulsive disorder (OCD)] and handle sufferers appropriately." 312 F.3d at 1319. Despite this failure to train, the prebooking officers were "left with discretion in determining whether an inmate suffers from a psychological disorder requiring medical attention." *Id.* The Tenth Circuit found that "[g]iven the frequency of [OCD], [the c]ounty's scant procedures on dealing with mental illness and the prebooking officers' apparent ignorance to [the plaintiff's] requests for medication, a violation of federal rights is quite possibly a 'plainly obvious consequence' of [a] failure to train . . . officers to address the symptoms." *Id.* at 1320 (quotation marks and citation omitted).

Reading the complaint in a light most favorable to Plaintiff, the Court determines that the allegations here are similar enough to the circumstances in *Olsen* that Count II will withstand the motion to dismiss. The Court takes as true the following facts: (1) GCDC staff receive little or no training on how to address the needs of detainees and inmates with health issues, and particularly

those with known health needs (prescriptions, etc.); (2) GCDC staff will likely encounter such health needs on a somewhat regular basis; (3) GCDC staff had discretion to consider Mr. Shivner's health needs in light of his post-operative discharge instructions and medications, including a prescription to alleviate constipation; and (4) GCDC staff ignored or refused to administer this prescription to Mr. Shivner for at least four days despite his complaints of pain due to constipation. Given these allegations, "a violation of federal rights is quite possibly a 'plainly obvious consequence' of [the Board's] failure to" provide adequate medical training to GCDC staff. *See id.* (quotation marks and citation omitted). In other words, the failure to train staff to recognize and treat symptoms using prescribed medications (or to seek help from trained medical professionals) is arguably the moving force behind Mr. Shivner's injuries. Consequently, the *Monell* claim in Count II remains.

### D. Plaintiff shall file an amended complaint to correct the name of the Board.

Finally, the Court notes that in her original complaint, Plaintiff named the "Grant County Commissioners" and the "Grant County Detention Center" as defendants. (*See* Doc. 1 at 1.) The County Defendants initially moved to dismiss in part on the basis that New Mexico law "requires that suits brought against a county be brought against 'the board of county commissioners of the county of [ _____ ] . . . .'" (Doc. 4 at 8 (quoting N.M. Stat. Ann. § 4-46-1).) Plaintiff later filed her First Amended Complaint, naming both the "Grant County Detention Center" and the "Board of County Commissioners of Grant County." (*See* FAC at 1.) Noting that Plaintiff is still not in compliance with § 4-46-1, the County Defendants incorporated their previous argument into their motion to dismiss the amended complaint.[3] (*See* Doc. 33 at 1 n.2.)

---

[3] As the First Amended Complaint largely mooted the remainder of the first motion to dismiss, the Court will deny the motion as moot.

The Court agrees that Plaintiff's case caption does not comply with the statute. First, she has incorrectly named the Board. Second, she named the GCDC, which is not a suable entity under either § 1983 or the NMTCA, as a defendant. *See, e.g.*, *Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 272 F. Supp. 3d 1256, 1267–68 (D.N.M. 2017). Accordingly, the Court directs her to file a Second Amended Complaint to reflect the proper county entity.

**THEREFORE,**

**IT IS ORDERED** that Defendants Grant County Commissioners, Grant County Detention Center, and Michael Carillo's Motion to Dismiss under Rule 12(b)(6) (Doc. 4) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Defendants Board of County Commissioners of Grant County and Michael Carillo's Motion to Dismiss Under Rule 12(b)(6) (Doc. 33) is **GRANTED IN PART** as follows: Count I is dismissed without prejudice entirely, and Count II is dismissed without prejudice as to Carillo only;

**IT IS FURTHER ORDERED** that the Grant County Detention Center is **DISMISSED with prejudice** as a defendant. Plaintiff shall file a Second Amended Complaint to correct the case caption within **seven days** of this Memorandum Opinion and Order.

ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE